SOUTHERN-OWNERS INSURANCE
COMPANY, a Michigan corporation;

      Plaintiff,

                                   CASE NO: 8:23-cv-786

v.

COSTA HOMES, INC., a Florida
corporation, HOWARD MILLIAN, and
SUSAN MILLIAN, Florida residents;

      Defendants.

---

**COMPLAINT: DECLARATORY RELIEF REQUESTED**

    SOUTHERN-OWNERS INSURANCE COMPANY ("Southern-Owners") files suit against COSTA HOMES, INC ("Costa") and HOWARD and SUSAN MILLIAN ("Millians"), collectively "Defendants," and in support alleges as follows:

**NATURE OF ACTION**

    1.    This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 to determine an actual controversy between the Parties regarding coverage under a general liability insurance policy.

    2.    Southern-Owners seeks a declaration that it has no duty to indemnify Costa for damages Costa has caused to its own work.

3.      The Millians initiated arbitration against Costa on March 12, 2021, alleging property damage to Costa's work. *See* American Arbitration Association Case No. 01-21-0002-2788 ("Underlying Action").

4.      Southern-Owners requests that this Court declare the rights and obligations of the parties under the insurance policy pursuant to 28 U.S.C. § 2201 *et seq.*, finding and declaring that Southern-Owners owes no coverage obligation to Costa in connection with the allegations and amounts sought in the Underlying Action.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      The amount in controversy here exceeds $75,000 because, in an insurance coverage action, the amount in controversy is the "value of the object of litigation from the plaintiff's perspective." *See QBE Ins. Corp. v. Surfside Properties & Mgmt., Inc.*, 2016 WL 6650713, at *1 (M.D. Fla. Nov. 10, 2016). "When an insurer seeks a declaration that it has 'no duty to defend or indemnify its insured in an underlying lawsuit,' the amount in controversy is determined by examining the following factors: '(1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the

obligation to defend the underlying lawsuit.'" *Id*. (quoting *Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309 (S.D. Fla. 2006)).

7.     Here, the Millians value their claim in "excess of $500,000.00." *See* Statement of Claim, filed in Underlying Action and attached hereto as Exhibit "A" ("Underlying Claim").

8.     Costa, in turn, demands coverage under an occurrence Policy with a $1,000,000.00 Policy limit. *See* Policy 144612-20224446 Declarations.

9.     Venue is proper in this district because "a substantial part of the events . . . giving rise to the claim occurred" in this district.  28 U.S.C. § 1391(a)(2).  More specifically, venue is proper because the subject insurance policy was issued, delivered, and incepted in Pinellas County, Florida, the Arbitration concerns property located in Pinellas County, Florida, and the construction contract was entered in Pinellas County, Florida.

## THE PARTIES

10.     Plaintiff Southern-Owners is a mutual insurance company incorporated in Michigan with its principal place of business in Lansing, Michigan. For purposes of this action, Southern-Owners is an insurance carrier that issued a commercial general liability insurance policy to Costa.

11.     Defendant Costa is a Florida corporation with its principal place of business in Palm Harbor, FL. Costa is the named insured under the insurance policy issued by Southern-Owners and is a defendant in the Underlying Action.

12.     Defendants Howard and Susan Millian ("Millians") are Florida residents. The Millians live in Oldsmar, Florida and are the claimants in the Underlying Action. The Millians are made a party to this declaratory action so they will be bound by the declaratory judgment.

## GENERAL ALLEGATIONS

13.     The Millians contracted with Costa to build a new single-family residence on property owned by the Millians. The Contract between Costa and the Millians was signed on July 11, 2016. Costa was the general contractor for the Home. *See* Ex. A pgs. 32-35.

14.     Plaintiffs agreed to pay Costa $1,140,000.00 to build a 2-story, 4-bedroom, 4 ½ bath, 3 car garage, 7,008 square foot waterfront home at 732 East Shore Drive, Oldsmar, Florida ("the Home"). *Id.*

15.     The Home was completed, and a Certificate of Occupancy issued as of October 2, 2019.

### *Underlying Arbitration*

16.     On November 20, 2020, the Millians initiated an American Arbitration Association arbitration against Costa. *See* American Arbitration Association Case

No. 01-21-0002-2788 ("Underlying Action"). A complete copy of the underlying Arbitration Statement of Claim ("Underlying Claim") is attached as Exhibit "A."

17.     The Millians' Underlying Claim asserts two counts against Costa. *Und. Cl.* ¶¶ 7-15.

18.     In Count One, the Millians allege that Costa failed "to construct the Home according to the terms of the Contract" and that as "a direct and proximate result of Costa's breach of contract, the Millians have suffered damages in excess of $500,000.00." *Und. Cl.* ¶¶ 9, 10.

19.     In Count Two, the Millians allege that they conferred a benefit on Costa by paying for construction of the Home and that it "would be inequitable for Costa to continue to retain the benefit of payment from the Millians in light of Costa's failure to construct the Home as requested." *Und. Cl.* ¶ 14.

20.     The Millians' Underlying Claim incorporates allegations from an attached engineering report. This attached engineering report alleges:

1.  Incorrect installation of a steel beam traversing the home adjacent to the second-floor landing.
2.  Improper modification to the steel beam, *i.e.*, removal of top and bottom flanges.
3.  Improper installation of tie down rods to anchor steel beam to structure.
4.  Improper modifications to floor trusses resting on the steel beam.
5.  Improper built up columns, differing from approved plans and specifications.
6.  Missing and improper tie down/anchor installation along walls, including load bearing walls.
7.  Missing second floor tie downs to slab.

8. Missing SP 1 connectors at the base and missing SP2 connectors at the top of load bearing walls.
9. Improper 2x4 spacing of studs within walls.
10. Inconsistent control joint spacing in slab, resulting in critical cracking throughout.
11. Cracking of floor slab below steel beam at the exterior wall.
12. Incorrect and uneven crown molding repair and installation.
13. Drastically uneven, bellied ceilings in first floor.
14. Drastically uneven, unlevel slab, exacerbated by an improperly compacted subsurface.
15. Drastically uneven second floors.
16. Significant ceiling cracking throughout first floor.
17. Uneven and buckling shiplap along stairwell area.
18. Significant crown molding separation on second floor.
19. Improper and unsafe installation of large cabinet island in second floor master closet, directly over compromised steel beam.
20. Long-term leaking pipes within the downstairs bathroom.

*Und. Cl.*, pg. 8 - 9.

21.     As damages the Millians seek "Damages equal to the cost to correct and complete construction of the Home as originally required of Costa" as well as prejudgment interest and the "Costs of this Action." *Und. Cl.* ¶ 15.

### THE SOUTHERN-OWNERS POLICIES

22.     Southern-Owners provided Costa with coverage under a Tailored Protection Policy with a policy number 144612-20224446 from January 6, 2016 through January 6, 2020. A copy of the 2016, 2017, 2018, and 2019 Policies are attached as Exhibits "B" – "E," respectively (collectively the "Policies").

23.     The Policies contain the following pertinent insuring agreement:

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

***

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES **A** AND **B**.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew or should have known, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

***

## 2. Exclusions

This insurance does not apply to:..

***

### j.  Damage to Property

"Property damage" to:
***

(6) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

***

### l.    Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

**SECTION V – DEFINITIONS**

***

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

17. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

***

18. "Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured.

All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

24.     Based on the terms of the Policies, there is no coverage for the damages sought in the Underlying Action.

25.     Southern-Owners requests this Court to find and declare that there is no duty to indemnify Costa under the Policies for the damages sought in the Underlying Action.

26.     All conditions precedent to the filing of this action have occurred, been performed, or have been waived.

## COUNT I – NO DUTY TO INDEMNIFY COSTA FOR COST TO REPAIR DEFECTIVE WORK

27.     Southern-Owners incorporates and re-alleges paragraphs 1 through 26 above as if fully set forth herein.

28.     In this case, Plaintiff's Arbitration Demand and Statement of Claim states Costa "is the company hired by the Millians to construct the Home." *Und. Cl.* ¶ 2.b.

29.     Examination of the "Building Agreement" between the parties reveals that Costa acted as the general contractor, contracting to build a new waterfront home for a price of $1,140,000.00. *See Und. Cl.* ¶ 8 and attached Building Agreement.

30.     As damages, the Millians seek money to remedy Costa's defective work on the Home. Specifically, the Millians' arbitration claim demands "Damages equal to the cost to correct and complete construction of the Home as originally required of Costa" as well as prejudgment interest and the "Costs of this Action." *Und. Cl.* ¶ 15.

31.     As damages the Millians seek the cost:

a)   To correct the alleged incorrect installation of a steel beam traversing the home.

b)   To correct the alleged improper modification to the steel beam.

c)   To correct the alleged improper installation of tie down rods to anchor the steel beam to the structure.

d)   To correct the alleged improper modifications to floor trusses resting on the steel beam.

e)   To correct alleged improper built up columns, alleged to differ from approved plans and specifications.

f)   To correct alleged missing and improper tie down/anchor installation along the walls, including load bearing walls.

g)   To correct missing second floor tie downs to the slab.

h)   To correct alleged missing SP 1 connectors at the base and missing SP2 connectors at the top of load bearing walls.

i)     To correct alleged improper 2x4 spacing of studs within walls.

j)     To correct alleged inconsistent control joint spacing in the slab.

k)     To correct alleged Incorrect and uneven crown molding repair and installation.

l)     And to correct alleged Long-term leaking pipes within the downstairs bathroom.

*Und. Cl.*, pg. 8 - 9.

32.     The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property ..." or "[l]oss of use of tangible property that is not physically injured ..." Policy Form 55300 at Section V. ¶ 18.

33.     Under a CGL policy, the cost of repairing or removing defective work, is not a claim for "property damage." *Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F. 3d 1294, 1306 (11th Cir. 2012).

34.     Only damage to an "'otherwise nondefective' component of the project" or personal property constitutes "property damage." *Id. See also West Orange Lumber Co. v. Indiana Lumbermens Mutual Insurance Co.*, 898 So.2d 1147, 1148 (Fla. 5th DCA 2005).

35.     The Millians include as damages the cost to remedy defective work. *Und. Cl.* ¶ 15.

36.     Specifically, the Millians seek the cost of correcting and remediating alleged improper installation of a steel beam, improper installation of tie downs, improper installation of control joints, improper laying of the slab, improper spacing of studs, and improper installation of pipes. *Und. Cl.*, pg. 8 - 9.

37.     The costs to repair and replace this allegedly defective work falls outside the policy definition of "property damage." *Id.* This is because the cost of repairing and replacing these particular allegedly defective components is the cost of correcting the defective work itself. *See Amerisure,* 673 F. 3d 1294 at 1306.

38.     The Millians initiated arbitration against Costa. Costa tendered this claim and arbitration to Southern-Owners and demanded that Southern-Owners pay for both defense and indemnity against this claim, including, specifically, indemnity for the cost of remediating alleged improper installation of a steel beam, improper installation of tie downs, improper installation of control joints, improper laying of the slab, improper spacing of studs, and improper installation of pipes.

39.     Southern-Owners is currently paying to defend Costa against the arbitration filed by the Millians. The Millians are demanding damages in an amount exceeding $500,000.00.

40.     In view of the foregoing, there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

41.     An actual and present controversy exists between the parties as to the scope of Southern-Owners' obligation to indemnify Costa for the damages alleged in the Underlying Action. There is a controversy as to:

a.  whether improper installation of a steel beam, improper installation of tie downs, improper installation of control joints, improper laying of the slab, and improper spacing of studs, constitutes "property damage" under the Policy;

b.  whether Southern-Owners has an obligation to indemnify Costa for the cost to repair and replace these allegedly defective components of Costa's work;

c.  whether the Millians have made any allegations of damages that are not excluded by the Policy.

42.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare the rights and obligations of the parties under the Policy.

**WHEREFORE,** Southern-Owners requests that this Court:

a.      Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the Policies.

b.      Find and declare that the applicable Policy is unambiguous.

c.    Find and declare that the cost of correcting the Home's allegedly defective components, including the structural and plumbing components, does not constitute "property damage" under the Policy and thus is not covered by the Policy.

d.    Find and declare that Southern-Owners has no obligation under the Policies to indemnify Costa for damage to the Home because the "property damage" definition when applied alongside the "Damage to Property" and "Your Work" exclusions, excludes all damage to the Home.

e.    To the extent allowable under applicable law, award Southern-Owners its costs for prosecuting this action, as well as any other relief that is equitable, just, or proper under the circumstances.

## COUNT II – NO DUTY TO INDEMNIFY COSTA FOR DAMAGE TO COMPLETED HOME

43.    Southern-Owners incorporates and re-alleges paragraphs 1 through 26 above as if fully set forth herein.

44.    In this case, Plaintiff's Arbitration Demand and Statement of Claim states Costa "is the company hired by the Millians to construct the Home." *Und. Cl.* ¶ 2.b.

45.    Examination of the "Building Agreement" between the parties reveals that Costa acted as the general contractor, contracting to build a new waterfront home for a price of $1,140,000.00. *See Und. Cl.* ¶ 8 and attached Building Agreement.

46.     As damages, the Millians seek money to remedy Costa's defective work on the Home. Specifically, the Millians' arbitration claim demands "Damages equal to the cost to correct and complete construction of the Home as originally required of Costa" as well as prejudgment interest and the "Costs of this Action." *Und. Cl.* ¶ 15.

47.     The Southern-Owners Policies issued to Costa contain the "Your Work" exclusion. Specifically, the Policies exclude:

**l.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

*Policy Form 5300* at Section I.A., ¶ 2.l.

48.     The "products-completed operations hazard" includes "completed" or "abandoned" work. *See Id.* at Section V ¶ 17.

49.     The "Your Work" Exclusion within the Policy is the "evolved" version of the exclusion that has eliminated the subcontractor exception. Without the subcontractor exception, Exclusion "l" acts to exclude all damage to the Home caused by an insured general contractor, even if the damages arise out of one of the insured's subcontractor's defective work. *See e.g., Auto-Owners Ins. Co. v. Elite Homes, Inc.*, 160 F. Supp. 3d 1307, 1314 (M.D. Fla. 2016), *aff'd,* 676 Fed. Appx. 951 (11th Cir. 2017); *Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F. 3d 1294, 1310 (11th Cir. 2012).

50.    The Millians are seeking to recover as damages, damages to the Home including cracking and sagging ceilings and floors, cracking in the slab, buckling shiplap, and cracking and separating crown molding.

51.    These damages are not covered by the Policy because they are damages to Costa's work. *Id.*

52.    The Millians initiated arbitration against Costa. Costa tendered this claim and arbitration to Southern-Owners and demanded that Southern-Owners pay for both defense and indemnity against this claim.

53.    Southern-Owners is currently paying to defend Costa against the lawsuit filed by the Millians. The Millians are demanding damages in an amount exceeding $500,000.00.

54.    In view of the foregoing, there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

55.    An actual and present controversy exists between the parties as to the scope of Southern-Owners' obligation to indemnify Costa for the damages alleged in the Underlying Action. There is a controversy as to:

    a. whether damage to the Home is excluded under the "Your Work" Exclusion;

b. whether Southern-Owners has an obligation to indemnify Costa for damages to the Millians' Home;

c. whether the Millians have made any allegations of damages that are not excluded by the Policy.

56. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare the rights and obligations of the parties under the Policy.

**WHEREFORE,** Southern-Owners requests that this Court:

a. Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the Policies;

b. Find and declare that the applicable policy's "Your Work" exclusion is unambiguous.

c. Find and declare that the applicable policy's "Your Work" exclusion applies to exclude all damage to the completed Home, including all "rip and tear," "loss of use," and other damages to the completed Home.

d. Find and declare that Southern-Owners has no obligation under the Policies to indemnify Costa because the "Your Work" exclusion when applied alongside the "Damage to Property" exclusion, excludes all damage to the Home.

e. To the extent allowable under applicable law, award Southern-Owners its costs for prosecuting this action, as well as any other relief that is equitable, just, or proper under the circumstances.

## COUNT III – NO DUTY TO INDEMNIFY COSTA FOR DAMAGES TO HOME DURING ONGOING OPERATIONS

57.     Southern-Owners incorporates and re-alleges paragraphs 1 through 26 above as if fully set forth herein.

58.     In this case, Plaintiff's Arbitration Demand and Statement of Claim states Costa "is the company hired by the Millians to construct the Home." *Und. Cl.* ¶ 2.b.

59.     Examination of the "Building Agreement" between the parties reveals that Costa acted as the general contractor, contracting to build a new waterfront home for a price of $1,140,000.00. *See Und. Cl.* ¶ 8 and attached Building Agreement.

60.     As damages, the Millians seek money to remedy Costa's defective work on the Home. Specifically, the Millians' arbitration claim demands "Damages equal to the cost to correct and complete construction of the Home as originally required of Costa" as well as prejudgment interest and the "Costs of this Action." *Und. Cl.* ¶ 15.

61.     In this case, the alleged damages are damages to the completed Home. However, to the extent the Underlying Claim is ambiguous about the timing of damages, exclusions "j.(6)" and "j.(7)" exclude coverage for damages that occurred during ongoing operations.

62.     The Southern-Owners Policies issued to Costa contain the "Damage to Property" exclusion. Specifically, the Policies exclude:

j.  **Damage to Property**

"Property damage" to:

. . .

(6) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Policy Form 55300 at Section I.A., ¶ 2.j.

63.     Exclusions "j.(6)" and "j.(7)" "operate in tandem, excluding coverage for property damage arising from *ongoing* work and for repair or restoration of property because of deficient work." *Oak Ford Owners Ass'n. v. Auto-Owners Ins. Co.*, 510 F. Supp. 2d 812, 819 (M.D. Fla. 2007) (emphasis added). Exclusions "j.(6)" and "j.(7)" apply to bar coverage if it is shown:

(1) that the property damage began while [Costa] was still performing operations, *i.e.*, before construction on [the Home] was completed; and *either* (2) that the property damage was caused by work that [Costa] was still performing; *or* (3) that the claimed damages are only for the repair, removal, or replacement of defective work.

*Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1241 (M.D. Fla. 2015) (citing *Oak Ford Owners Ass'n.*, 510 F. Supp. 2d at 819) (emphasis added).

64.     Where the insured is the general contractor and damage occurs during ongoing operations these exclusions "serve to deny coverage when the insured builder or its subcontractor has caused *any* damage to the home itself." See *Bradfield* at 1243 (emphasis added).

65.     Here, Costa was the general contractor performing work on the entire house. Thus, to the extent that there was any damage 1) to the Home, 2) arising out of Costa's work on the Home, 3) during ongoing operations, "j(6)" operates to exclude coverage. *Id.*

66.     Any damage related to the removal, repair, or replacement of the allegedly defective structural components is likewise excluded under "j(7)." *Id.*

67.     This is because, the "particular part of real property" on which a general contractor is working, is the entire home. *Id.* Thus, damage to the home necessarily arises out of "that particular part of the property" on which the general contractor is working, or alternatively, relates to the repair or replacement of the contractors work on the Home. *Id.*

68.     The Millians are seeking to recover as damages, damages to the Home including cracking and sagging ceilings and floors, cracking in the slab, buckling shiplap, and cracking and separating crown molding.

69.     These damages are not covered by the Policy because, to the extent they occurred prior to completion, these damages to the Home arise out of "that particular

part of the property" on which Costa was working, or alternatively, relate to the repair or replacement of Costa's work on the Home. *Id.*

70.     The Millians initiated arbitration against Costa. Costa tendered this claim and arbitration to Southern-Owners and demanded that Southern-Owners pay for both defense and indemnity against this claim.

71.     Southern-Owners is currently paying to defend Costa against the arbitration filed by the Millians. The Millians are demanding damages in an amount exceeding $500,000.00.

72.     In view of the foregoing, there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

73.     An actual and present controversy exists between the parties as to the scope of Southern-Owners' obligation to indemnify Costa for the damages alleged in the Underlying Action. There is a controversy as to:

    a.  whether damage to the Home prior to completion is excluded under the "Damage to Property" Exclusion;

    b.  whether Southern-Owners has an obligation to indemnify Costa for damages to the Millians' Home;

    c.  whether the Millians have made any allegations of damages that are not excluded by the Policy.

74. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare the rights and obligations of the parties under the Policy.

**WHEREFORE,** Southern-Owners requests that this Court:

a. Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the Policies.

b. Find and declare that the applicable policy's "Damage to Property" exclusion is unambiguous.

c. Find and declare that the applicable policy's "Damage to Property" exclusion applies to exclude damage to the Home prior to completion, including any damages alleged to be caused by the alleged structural and plumbing defects, and/or any such other damages occurring prior to completion.

d. Find and declare that Southern-Owners has no obligation under the Policies to indemnify Costa because the "Damage to Property" exclusion when applied alongside the "Your Work" exclusion, excludes all damage to the Home.

e. To the extent allowable under applicable law, award Southern-Owners its costs for prosecuting this action, as well as any other relief that is equitable, just, or proper under the circumstances.

## COUNT IV – NO DUTY TO INDEMNIFY COSTA FOR DAMAGES THAT ARE NOT COVERED BY THE POLICY

75. Southern-Owners incorporates and re-alleges paragraphs 1 through 26 above as if fully set forth herein.

76.     In this case, Plaintiff's Arbitration Demand and Statement of Claim states Costa "is the company hired by the Millians to construct the Home." *Und. Cl.* ¶ 2.b.

77.     Examination of the "Building Agreement" between the parties reveals that Costa acted as the general contractor, contracting to build a new waterfront home for a price of $1,140,000.00. *See Und. Cl.* ¶ 8 and attached Building Agreement.

78.     As damages, the Millians seek money to remedy Costa's defective work on the Home. Specifically, the Millians' arbitration claim demands "Damages equal to the cost to correct and complete construction of the Home as originally required of Costa" as well as prejudgment interest and the "Costs of this Action." *Und. Cl.* ¶ 15.

79.     The cost of repairing defective work is not covered by the Policy and falls outside the scope of the policy definition of "property damage." *See Amerisure,* 673 F. 3d 1294 at 1306.

80.     Damage to the completed Home is not covered by the Policy. Exclusion "l" excludes damage to Costa's completed work. *See Elite Homes, Inc.*, 160 F. Supp. at 1314. Costa was the general contractor and built the entire Home. Therefore, damages to the completed Home are excluded under exclusion "l."

81.     Damages to Costa's ongoing work caused by Costa prior to completion of the Home, are excluded by exclusions "j(6)" and "j(7). *See Bradfield,* 143 F. Supp. 3d at 1243. Costa was the general contractor and is alleged to have caused the damage. Therefore, damages to the Home prior to completion are excluded under exclusions "j(6)" and "j(7). *Id.*

82.     As the only alleged damage is damage to correct Costa's work or alternatively damage caused by Costa to Costa's work, there is no coverage under the Policy for damage to the Home, whether the damage occurred before or after completion of the Home. *Id.*

83.     The Millians initiated arbitration against Costa. Costa tendered this claim and arbitration to Southern-Owners and demanded that Southern-Owners pay for both defense and indemnity against this claim.

84.     Southern-Owners is currently paying to defend Costa against the arbitration filed by the Millians. The Millians are demanding damages in an amount exceeding $500,000.00.

85.     An actual and present controversy exists between the parties as to the scope of Southern-Owners' obligation to indemnify Costa for the damages alleged in the Underlying Action. There is a controversy as to whether the Millians have made any allegations of damages that are covered by the Policy.

86.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare the rights and obligations of the parties under the Policy.

**WHEREFORE,** Southern-Owners requests that this Court:

a.     Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the Policies.

b.     Find and declare that Southern-Owners has no obligation under the Policies to indemnify Costa because the Policy provisions, exclusions, and definitions preclude coverage under the Policy.

c.     Alternatively, find and declare that Southern-Owners has no obligation under the Policies to indemnify Costa for damage to the Home.

d.     Alternatively, find and declare that Southern-Owners has no obligation under the Policies to indemnify Costa for that part of the damages that fall outside the coverage of the Policy.

e.     To the extent allowable under applicable law, award Southern-Owners its costs for prosecuting this action, as well as any other relief that is equitable, just, or proper under the circumstances.

Dated: April 11, 2023

Respectfully submitted,

**DAVIS LAW FIRM**

*s/Timothy H. Snyder*
**TODD M. DAVIS, ESQ.**

FL Bar No. 58470
TD@DavisPLLC.com
**Timothy H. Snyder, Esq.**
FL Bar No. 37210
TS@DavisPLLC.com
231 East Adams Street
Jacksonville, FL 32202
904-400-1429 (T)
904-638-8800 (F)
*Attorney for Southern-Owners/Trial Counsel*